# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DEBORAH DAVIS, :

             Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

             Defendant. :

Case No. 3:08-cv-391

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a.

With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national

3

economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on December 31, 2003, alleging disability from May 1, 2001, due to sleep apnea, dizzy spells, arthritis, depression, headaches, exhaustion, and memory problems. (Tr. 59-61; 71)[1]. Plaintiff's applications were denied initially and on reconsideration. (Tr. 47; 52). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 929-57), who determined that Plaintiff is not disabled. (Tr. 14-33). Plaintiff requested the Appeals Council review Judge Padilla's decision at which time she amended her onset date to December 27, 2003. (Tr. 922-28). The Appeals Council denied Plaintiff's request for review, (Tr. 6-9), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe obesity, dysthymia, a personality disorder, and obstructive sleep apnea, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 21, ¶ 3; Tr. 25, ¶ 4). Jude Padilla also found that Plaintiff has the residual functional capacity to perform a limited range of medium work. *Id.,* ¶ 5. Judge Padilla then used sections 203.21 through 203.24 and 203.14 through 203.16 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 32, ¶ 11). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 33).

Plaintiff has a history of several medical conditions including a torn right knee ligament requiring surgery in 1994, (Tr. 387), gastrointestinal reflux disease since 1998, (Tr. 211), pulmonary problems in 1998, (Tr. 227), blood pressure problems, (Tr. 283-84), and incisional

---

[1] The record shows that Plaintiff filed applications for both SSD and SSI. *See,* Tr. 17; 46. However, Plaintiff's application for SSI is not included in the record.

hernias requiring surgical repair. (Tr. 327).

The record contains a copy of Plaintiff's treatment notes from the Beavertown Clinic dated December 4, 1997, through February 18, 2002. (Tr. 270-82). Those records reveal that Plaintiff received treatment at that facility for various complaints including vertigo, hypertension, nausea, sore throat, depression, pharyngitis, situational anxiety, GERD, dysthymia, knee pain, and tachycardia. *Id.*

The record contains a copy of Plaintiff's treatment notes from treating physician Dr. Derksen dated January, 2002, through August 2, 2006. (Tr. 512-58; 811-25). Those records reveal that Dr. Derksen treated Plaintiff for various medical conditions including dizziness, obesity, hypertension, bronchitis, ventral hernia, depression, otitis, bipolar disorder, chest pain, and tachycardia. *Id.*

In June, 2003, consulting physician Dr. Iberico reported that Plaintiff had alveolar hypoventilation and obstructive sleep apnea. (Tr. 365-73). Dr. Iberico noted that Plaintiff's height was 5'6" and that she weighed 267 pounds. *Id.* Dr. Iberico recommended that Plaintiff use oxygen supplementation. *Id.*

Examining physician Dr. Danopulos reported on June 14, 2003, that Plaintiff was 5'6" tall, weighed 270 pounds, had normal ranges of motion of her upper and lower extremities, slightly painful knee motions, normal gait, restricted and painful lumbar spine motions, and a normal neurological examination. (Tr. 387-97). Dr. Danopulos also reported that Plaintiff had a history of depression for which she has been treated since she was sixteen years old and that the objective findings were history of sleep apnea, restrictive lung disease triggering effort-related shortness of breath, right knee status post arthroscopic surgery with chronic pain, well-controlled hypertension,

5

morbid obesity, and depression. *Id.* Dr. Danopulos opined that Plaintiff's ability to perform any work-related activities was restricted from her lung disease which did not allow her to move around as much as she wants, her right knee chronic pain, her possible early arthritis of the lumbar spine, and her morbid obesity. *Id.*

On March 1, 2004, Dr. Derksen reported that Plaintiff has a longstanding history of major depression, has been seen by multiple psychiatrists, has been on a number of psychotrophic medications, and that she remained significantly depressed. (Tr. 537-38). Dr. Derksen also reported that she had a history of sleep apnea and arthralgias especially in her knees. *Id.* Dr. Derksen noted that Plaintiff alleged memory problems and was morbidly obese which accounted for her significant polyarthralgias and polyarthritis especially in her knees. *Id.*

Examining psychologist Dr. Schulz reported on March 5, 2004, that Plaintiff was diagnosed with depression in 1967, her family physician was treating her for the depression, she was hospitalized for psychiatric treatment twice in 1987, received outpatient counseling at Children's Psychiatric Hospital for a year in 1967, and that she received counseling at South Community Mental Health Center in 1986, with her son and daughter for six months and then by herself for two years. (Tr. 379-86). Dr. Schulz also reported that Plaintiff graduated from high school, had taken about twelve hours of general education courses at Sinclair Community College, had normal speech, normal affect, calm motor activity, was alert and oriented, and that her judgment was sufficient to make life decisions, conduct her own affairs, and participate in treatment. *Id.* Dr. Schulz noted that Plaintiff's verbal IQ was 107, her performance IQ was 98, and her full scale IQ was 103, placing her in the average range, her memory functioning was in the average or above range, and her diagnoses were dysthymia and personality disorder. *Id.* Dr. Schulz assigned Plaintiff a GAF of 60. *Id.* Dr.

6

Schulz opined that Plaintiff's abilities to relate to others, to understand, remember, and follow instructions, and to maintain attention and concentration to perform simple repetitive tasks were minimally impaired and that her ability to withstand the stress and pressures associated with day-to-day work activity was mildly to moderately impaired. *Id.*

In June, 2004, Plaintiff sought emergency room treatment for complaints of anger, paranoia, and road rage. (Tr. 398-406). Plaintiff was evaluated by a crisis worker who reported that Plaintiff was moderately depressed, sad, logical, cooperative, oriented, and alert. *Id.* Plaintiff was referred to South Community, Inc., for psychiatric evaluation and treatment. *Id.*

Plaintiff was evaluated at Eastway Behavioral Health in July, 2004, at which time it was noted that Plaintiff's thought process was tangential, her affect flat, and her mood anxious. (Tr. 459-71). Plaintiff's diagnoses were identified as major depressive disorder, recurrent, mild to moderate, dysthymic disorder, anxiety disorder NOS, and a borderline personality disorder. *Id.* Plaintiff continued to receive treatment at Eastway during the period July, 2004, through January, 2005. *Id.*

Dr. Derksen reported on September 28, 2004, that Plaintiff had a longstanding history of bipolar disorder, recurrent major depression, hypertension, chronic low back pain, osteoarthritis of the knees, and sleep apnea, that she has been on psychiatric medication for several years but her symptoms have escalated in the past few years, and that when he last saw her on August 13, 2004, she exhibited a very depressed mood, much anger, and agitation. (Tr. 531-32). Dr. Derksen also reported that Plaintiff had significant psychological limitations with respect to work, moderate limitations with the abilities to remember locations and work-like procedures, remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended

periods, perform activities within a schedule, and the ability to maintain regular attendance and be punctual. *Id.* Dr. Durksen noted that Plaintiff had moderate limitations in the abilities to interact with the general public, accept instructions, respond appropriately to criticism, set realistic goals, and adapt appropriately to changes in the work setting. *Id.* Dr. Derksen also noted that Plaintiff had moderate limitations due to chronic back pain and osteoarthritis of the knees. *Id.*

Plaintiff was evaluated at South Community on February 18, 2005. (Tr. 775-80). Plaintiff's diagnoses were identified as mood disorder NOS, rule out post-traumatic stress disorder, and borderline personality traits and she was assigned a GAF of 50. *Id.*

The record contains a copy of Plaintiff's voluminous treatment records from South Community dated March, 2005, through April, 2006, and October through November, 2006. (Tr. 575-772; 907-21). Those records reveal that Plaintiff was initially treated by psychologist Dr. Kocian-Figueroa who identified Plaintiff's diagnoses as major depressive disorder, moderate, post-traumatic stress disorder, and personality disorder NOS. *Id.* Over time, Plaintiff was also treated by Dr. Longo at South Community. *Id.*

Plaintiff was hospitalized August 22-26, 2005, for treatment of major depression, recurrent, severe, at which time it was noted that Plaintiff had suicidal ideations with a plan. (Tr. 490-93). Plaintiff was treated with therapy and medications and discharged in an improved condition and she was assigned a GAF of 30. *Id.*

On October 22, 2006, Dr. Derksen reported that Plaintiff's diagnoses included bipolar disorder (anxiety and depression), hypertension, postural orthostasis, recurrent dizziness, gastroesophageal reflux disease, osteoarthritis of the knees, and morbid obesity, that she had suffered for many years with bipolar disorder, was on extensive medications as managed by her

8

psychiatrist, and that she had undergone extensive psychotherapy. (Tr. 881-87). Dr. Derksen also reported that he had not seen any improvement in Plaintiff's condition since he has been treating her, she had been so depressed at times that she was suicidal, she had no emotional reserve whatsoever, and that she could not be exposed to any stress as would be required with expected productivity in the workplace. *Id.* Dr. Derksen noted that Plaintiff had an extremely limited ability to deal with others, a short attention span and distinct inability to concentrate, and that the postural hypotention and recurrent dizziness would be problems if she were expected to maintain standing or work near machinery in the workplace. *Id.* Dr. Derksen also noted that Plaintiff's morbid obesity and osteoarthritis of the knees resulted in profound limitations with respect to lifting, carrying, climbing, stooping, crouching, kneeling, crawling, reaching, pushing, and pulling, and that she could not perform those activities. *Id.* Dr. Derksen opined that Plaintiff was permanently disabled from any gainful work, that she was able to lift/carry up to five pounds occasionally, stand for one hour in an eight-hour workday and for ten minutes without interruption, her ability to sit was not affected, and that she was not capable of performing either light or sedentary work. *Id.*

On November 8, 2006, Dr. Kocian-Figueroa reported that she began treating Plaintiff in February/March, 2005, treated her until April, 2006, and again began treating her on October, 24, 2006, that her diagnoses were major depressive disorder, recurrent, moderate, and personality disorder NOS, and that she was not capable of performing many work-related mental activities. (Tr. 888-96). Dr. Kocian-Figueroa also reported that Plaintiff consistently came to her appointments, tended to be argumentative, confrontational, and defensive, had a poor tolerance for stress and frustration, had significant interpersonal difficulties, and that she had poor impulse control at times. *Id.*

9

Plaintiff essentially alleges in her Statement of Errors that the Commissioner erred by rejecting the opinions of her treating psychologist and treating physician that she is disabled by her alleged mental impairments. (Doc. 10).

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* at 406, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley, supra, quoting, Wilson, supra.* On the other hand, a Social Security Ruling[2] explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic

---

[2] Of course, although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

10

techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Blakley, supra, citing, Wilson, supra.* and 20 C.F.R. § 404.1527(d)(2).

Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakely,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an

11

ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Blakely, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Dr. Derksen's and Dr. Kocian-Figueroa's opinions that Plaintiff is totally disabled by her alleged mental impairments, Judge Padilla essentially found that those opinions were inconsistent with the clinical records as well as with the opinions of Dr. Schulz and the reviewing mental health specialists. (Tr. 27-30). In addition, Judge Padilla noted that Dr. Derksen's opinion was not entitled to great weight because he is a family physician and not a mental health specialist which, of course, is an accurate statement of the law in the Sixth Circuit. *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 805 (6th Cir. 1985).

Although Dr. Derksen and Dr. Kocian-Figueroa both essentially opined that Plaintiff is totally disabled, those opinions are not supported by the mental health treatment notes. A review of the clinical notes from South Community, including Dr. Kocian-Figueroa's notes, reveals that they are primarily recitations of Plaintiff's subjective complaints. (Tr. 575-780). In addition, the notes indicate that over time, Plaintiff made "some" to but generally made "good" progress. *Id.* Further, while the notes indicate that Plaintiff was depressed with a flat affect at times, at other times she had a full affect, was pleasant and relaxed, her thought processes were normal, and that she was meeting the goals of treatment. *Id.* Finally, as Judge Padilla noted, Dr. Kocian-Figueroa did not perform any formal mental health examination of Plaintiff. Rather, she saw her in a counseling setting and, as noted above, simple reported Plaintiff's subjective allegations and

12

complaints in her clinical notes.

Under these facts, the Commissioner did not err by rejecting Dr. Derksen's and Dr. Kocian-Figueroa's opinions that Plaintiff is totally disabled by her alleged mental impairment.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

January 12, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it

as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).